```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ENCOMPASS ADVISORS, LTD.,       :

     Plaintiff,                 :
                                :
     v.                         :       CASE NO. 3:09CV1949(DFM)
                                :
UNAPEN, INC. et al.,            :
                                :
     Defendants.                :
```

### RULING ON MOTION TO PRECLUDE EXPERT

Plaintiff, an investment advising and wealth management corporation, brings this breach of contract action alleging that computer programs designed and licensed by defendants did not function as promised. Pending before the court is defendants' Motion to Preclude Plaintiff's Expert. (Doc. #103.) For the reasons that follow, the motion is denied.

A. <u>Background</u>

In the Amended Complaint (doc. #47), plaintiff alleges as follows. Prior to contracting with defendants, plaintiff used a client contact management program called Junxure and a separate program called Schwab PortfolioCenter from which it could run reports on clients' portfolios. Plaintiff told defendants that it sought a client management program that could directly link to data in PortfolioCenter, which Junxure could not do. Plaintiff explained that he was seeking daily, dynamic portfolio performance reporting for each of his clients' portfolios

1

similar to that available in a program called Black Diamond. Defendant promised to deliver a program called ClientLogix that had the following attributes:

- daily dynamic portfolio performance reporting for each of the clients' portfolios equivalent to Black Diamond,
- dashboard allowing investment advisor to customize the performance reporting screen for each client, which Black Diamond could not do,
- lower cost than Black Diamond,
- state of the art Client Relations Management (CRM) system designed for Registered Investment Advisors (RIAs), and
- seamless retrieval of data from Schwab PortfolioCenter, eliminating the need to run separate reports in PortfolioCenter.

In January 2007, the parties entered a contract to license ClientLogix.  In January 2008, plaintiff terminated the contract citing deficiencies in the product.

Plaintiff commenced this action in May 2009 claiming fraud, breach of contract and violation of the Connecticut Unfair Trade Practices Act in connection with ClientLogix.  Plaintiff also claims breach of contract in connection with another program called ClientRep Lite.  (Doc. #47.)  Defendants make two breach of contract counterclaims.  (Doc. #52.)  In December 2012,

2

plaintiff disclosed the report of proposed expert witness Joel Bruckenstein whose field of expertise is applied technology for financial service professionals.  Plaintiff supplemented its disclosure three times to cure deficiencies identified by defendants.  In July 2013, in a deposition, the witness testified that he directly examined ClientLogix a single time after he had already submitted his first expert report.  The witness testified that, on a second occasion, he remotely observed a session in which defendants, for discovery purposes, performed a review of ClientLogix on plaintiff's computer system.  (Doc. #103-2.)  In October 2013, defendants filed the pending Motion to Preclude on grounds that the expert's opinion is unreliable.[1]

---

[1] Plaintiff filed an opposition brief (doc. #106) to which defendants replied (doc. #109).  In a sur-reply, plaintiff submitted an affidavit from an undisclosed "expert," John Olsen, attempting to bolster the reliability of Bruckenstein's conclusions.  (Doc. #113.)  Plaintiff did not seek leave to file the sur-reply, and the court has not considered it.  See D. Conn. L. Civ. R. 7 (no provision for sur-replies); DeRay v. Larson, No. 3:02CV2139(JCH), 2004 WL 2211939, at *4 (D. Conn. Sep. 29, 2004) ("sur-replies are not permitted under the Local Rules of the District of Connecticut"); Marczeski v. Law, 122 F. Supp. 2d 315, 317 n.2 (D. Conn. 2000) (sur-reply briefs may be filed only with leave of court).
   Plaintiff also proffers Olsen's testimony to bolster Bruckenstein's reliability in the event of a Daubert hearing.  A Daubert hearing is not necessary under the circumstances.  See United States v. Williams, 506 F.3d 151, 160-61 (2d Cir. 2007) (court's Rule 702 gatekeeping function "does not necessarily require that a separate [Daubert] hearing be held"); Sawant v. Ramsey, No. 3:07CV980(VLB), 2012 WL 3265020, at *17 (D. Conn. Aug. 09, 2012) (citing examples).  Regardless, Olsen may not

B.  Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"[T]he district court has a 'gatekeeping' function under Rule 702 — it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)).  If the evidence is relevant under the Rule 401 standard, the court in its gatekeeping role "must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" using the Rule 702 indicia of reliability. Amorgianos, 303 F.3d at 265 (citations and quotation marks omitted).  "In short, the district court must 'make certain that an expert, whether basing testimony upon professional studies or

---

testify because he was not disclosed as an expert as required by Fed. R. Civ. P. 26(a).  See Fed. R. Civ. P. 37(c)(1) (if information or witness was not disclosed as required by Rule 26(a) or (e), party may not use it to supply evidence on motion, at hearing or at trial).

personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  Id. at 265-66 (quoting Kumho Tire, 526 U.S. at 152).

The Rule 702 inquiry is flexible and must be tied to the facts of a particular case.  Id. at 266.

> In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions. . . .  [W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony.

Id. (citations omitted).  But "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702 Advisory Committee's Note (2000).  "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Amorgianos, 303 F.3d at 267 (citing Daubert, 509 U.S. at 596).

C.  Discussion

1. Expertise

Defendants first argue that plaintiff lacks sufficient expertise because he has no education or training in computer

5

programming.  The claims in this case turn on whether defendants promised to deliver a computer program that would suit the needs of plaintiff's Registered Investment Advisor.  The witness worked close to 15 years as an investment broker.  In addition, he has worked as technology columnist for Financial Planning Magazine and Financial Advisor Magazine where he reviewed the functionality of programs for investment advisors similar to the one at issue here.  He has written two books on practice management and co-founded an annual technology conference for financial advisors.  "Experience in conjunction with other knowledge, skill, training or education . . . [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Fed. R. Evid. 702 Advisory Committee Note (2000); see also Kumho Tire, 526 U.S. at 156 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").  The witness has the requisite qualifications to provide reliable insight on the usefulness of defendant's program to an investment advisor.

    2.  Methodology

Defendants next argue that the witness's methodology is unreliable.  They first object that the witness lacks sufficient data because he did not directly examine the subject computer

program until after he made his first expert disclosure.  He has since examined the program and supplemented his disclosures,[2] so the objection is moot.

Defendants next object that the witness did not employ a method that could be reconstructed or objectively verified. Instead, he "clicked around a little bit" with certain functionalities in mind based on 15 years of discussion in the field rather than a formal set of criteria.  In arguing that this methodology precludes admissibility of the testimony, defendants adhere too rigidly to the four factors set forth in Daubert — testing, peer review, error rates, and general acceptability.  The test of reliability under Rule 702 is flexible, and the Daubert factors set forth in do not constitute a "definitive checklist or test."  See Kumho Tire, 526 U.S. at 150 (quoting Daubert, 509 U.S. at 593).  The pertinence of the Daubert factors depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Id.  Although the Daubert questions "will often be appropriate," the trial judge "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  Id. at 152. Here, witness's expertise is specialized but neither scientific

---

[2]There was no challenge to the supplementation.  Cf. Levinson v. Westport Nat. Bank, No. 3:09CV269(VLB) et al., 2013 WL 3280013, at *4 (D. Conn. June 27, 2013).

7

nor particularly technical.  He proffers opinions on what functions a Registered Investment Advisor would desire, whether defendants' computer program had those functions and whether certain competitor programs — to which defendants allegedly compared their product during contract negotiations — had those functions.  The witness can opine reliably on these issues based on his experience, direct examination and remote observation of the program on separate occasions, and review of the testimony of the parties.

To the extent that defendants contend that there are errors or omissions in the witness's report, those contentions go to the weight of the evidence, not its admissibility.  "Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Cohalan v. Genie Indus., Inc., No. 10 Civ. 2415, 2013 WL 829150, *5 (S.D.N.Y. Mar. 1, 2013) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)); see also GlobalRock Networks, Inc. v. MCI Communications Services, Inc., --- F. Supp. 2d ----, No. 1:09CV1284(MAD/RFT), 2013 WL 1891303, at *17-18 (N.D.N.Y. May 06, 2013) (argument that expert neglected to perform essential

tests goes to weight, not admissibility).  Defendants will have the opportunity to challenge the usefulness of the testimony through vigorous cross-examination and presentation of contrary evidence.

    D.  <u>Conclusion</u>

    For the foregoing reasons, the Motion to Preclude Plaintiff's Expert (doc. #103) is DENIED.

    SO ORDERED at Hartford, Connecticut this 5th day of December, 2013.

                                      _____/s/_____
                                      Donna F. Martinez
                                      United States Magistrate Judge